UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:25-CV-00050-RSE

**PILAR P.**                                                                                                    **PLAINTIFF**

VS.

**FRANK BISIGNANO,**
*Commissioner of Social Security*[1]                                                      **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Claimant Pilar P.'s ("Claimant's") application for disability insurance benefits and supplemental security income benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Claimant (DN 13) and the Commissioner (DN 15) filed a Fact and Law Summary. Claimant filed a reply brief. (DN 16). The Parties consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10).

## I. Background

Claimant applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVIII of the Social Security Act on January 4, 2022, alleging disability beginning on December 11, 2021. (Transcript, hereinafter, "Tr." 289-92). She alleged disability based on PTSD, panic attacks, trauma, "sexually abusive younger

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano is substituted for Leland Dudek as Defendant in this case.

years," anxiety, depression, and "[h]aven't been been [sic] diagnosed with bipolar YET . . . ." (Tr. 347). Claimant's application was denied by the State Agency Disability Determination Service at both the initial and reconsideration levels. (Tr. 11).

At Claimant's request, Administrative Law Judge Dennis Pickett ("ALJ Pickett") conducted a hearing in Louisville, Kentucky, on February 12, 2024. (Tr. 43). Claimant and her counsel appeared by telephone.[2] (Tr. 45). An impartial vocational expert also participated in the hearing. (*Id.*). During the hearing, Claimant testified to the following. She worked as a pool cleaner during Summer 2022 and as a server from April 2023 to September 2023. (Tr. 49-50). Her panic attacks prevent her from working full-time. (Tr. 52). She has been diagnosed with PTSD and agoraphobia and has trouble being around people. (*Id.*, Tr. 58). Claimant reported that, when she experiences panic attacks, she sweats, has blurry vision, has trouble hearing, and feels stiff in her neck and shoulders. (Tr. 53). Claimant said her friend is trying to help her with the panic attacks, but it is not working. (Tr. 56). She participates in talk therapy for her PTSD and wants to try medication to further treat the PTSD. (Tr. 55). Claimant reported self-medicating with marijuana "as much as possible." (Tr. 58). She only leaves her house to attend medical appointments. (Tr. 59). Despite having a driver's license, she uses a ride-share service to go to her therapy appointments. (*Id.*). Claimant has three children. (Tr. 57). The children are school-aged but two do not attend school because they "mentally . . . shut down" due to their father's abuse. (*Id.*). Claimant stated her only income is child support. (Tr. 58). Claimant completed high school but still experiences trouble with math and reading. (Tr. 59-60).

ALJ Pickett issued an unfavorable decision on May 9, 2024. (Tr. 24). In doing so, he applied the Commissioner's five-step evaluation process for determining whether a claimant is

---

[2] The hearing was conducted telephonically because of the COVID-19 pandemic. (Tr. 40).

disabled, 20 C.F.R. § 404.1520, and found as follows. First, Claimant engaged in substantial gainful activity from June 2022 through August 2022, but there has been a continuous 12-month period during which Claimant did not engage in substantial gainful activity. (Tr. 29-30). Second, Claimant has the severe impairments of depression, post-traumatic stress disorder (PTSD), and anxiety with panic attacks. (Tr. 30). Third, none of the Claimant's impairments or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 31). Fourth, Claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant can understand, carry out and remember simple instructions and procedures and respond appropriately to supervisors and coworkers in usual work situations. She can deal with changes in a routine work setting that does not require working with the public and requires no more than occasional interaction with supervisors and coworkers.

(Tr. 32). In making his RFC determination, ALJ Pickett found that, with regard to Claimant's depression, PTSD, and anxiety with panic attacks, medical evidence supports Claimant sought treatment, takes medication to treat her symptoms, and at times was anxious and/or depressed when presenting for treatment. (Tr. 33 (citing Tr. 467)). On the other hand, ALJ Pickett noted that Claimant "most often did not exhibit any abnormal motor activity or movements" and "remained pleasant, friendly, and cooperative" despite her anxiety and abnormal moods. (*Id*.). Additionally, ALJ Pickett observed that cognitive testing reflected that Claimant was "focused, alert, and attentive, with intact memory, organized through processes, and no abnormal thought content." (*Id*.). ALJ Pickett noted the "remarkably stable" mental status findings across "multiple different provides [sic]." (*Id*. (citing Tr. 546, 548-51, 569-70, 577-78, 582-84, 586-87)). While recognizing

3

Claimant testified to having "disabling panic attacks," ALJ Pickett observed Claimant's records indicated the attacks were less frequent and severe as what was described at the hearing. (*Id*. (citing Tr. 468-537, 555-1107)). ALJ Pickett also considered the opinions of the state agency psychological consultants, who found that Claimant had no severe mental impairments and did not render an opinion as to her functional abilities. (*See* Tr. 34, 80-81, 87-88). ALJ Pickett ultimately determined that the record supported some limitations. (Tr. 32-34). Specifically, ALJ Pickett limited Claimant to a range of simple work with reduced social interaction. (*Id*.).

Finally, ALJ Pickett determined that Claimant was unable to perform any past relevant work but, considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 34-35).

ALJ Pickett concluded Claimant was not under a disability, as defined in the Social Security Act, from December 11, 2021 through the date of his decision. (Tr. 36). Claimant appealed ALJ Collins' decision. (Tr. 284-85). Because the Appeals Council denied Claimant's request for review (Tr. 11), the Commissioner's decision became final on June 14, 2024. On January 23, 2025, Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-4 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F. 2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id*. at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could support a decision as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Analysis

Claimant asserts ALJ Pickett improperly "played doctor" by solely relying on his own lay interpretation of raw medical data and diagnosis to create the RFC. Claimant argues that it was improper for ALJ Pickett to assess Claimant's RFC without any medical opinion on the record as to Claimant's functional limitations. (DN 14, at PageID # 1155). ALJ Pickett had an obligation, Claimant argues, to develop the record by obtaining a medical opinion regarding Claimant's functional limitations. (*Id*. at PageID # 1158).

In response, the Commissioner argues that an ALJ must determine functional limitations from the record and the determination does not need to be based on a supporting medical opinion.

(DN 15, at PageID # 1164 (citing *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 401 (6th Cir. 2016))).

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). In other words, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id*. (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

Although some medical evidence must support the RFC, an ALJ is not required to base an RFC on a corresponding medical opinion. *See Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020); *Tucker v. Comm'r of Soc. Sec.*, 775 F.App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding."); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 723 F. App'x 395, 401-02 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). Further, "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (citing 20 C.F.R. § 416.917(a)). While the ALJ has a duty to conduct a "full inquiry," that duty "does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Id*. (quoting *Turner v. Califano*, 563

F.2d 669, 671 (5th Cir. 1977)); *see also* 20 C.F.R. § 416.919a(b)(1) (an ALJ may be required to obtain a consultative examination when "[t]he additional evidence needed is not contained in the records of [the claimant's] medical sources")).

Claimant points to the so-called "*Deskin* rule" in support of her argument that ALJ Pickett should have obtained a medical opinion to support his RFC determination. (DN 13, at PageID # 1154 (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp. 2d 908, 911 (N.D. Ohio 2008))). The *Deskin* court articulated the rule as follows:

> [W]here the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing.

(*Id.*). In the years following *Deskin*, district courts within the Sixth Circuit narrowed this rule to apply only (1) where an ALJ made an RFC determination based on no medical source opinion; or (2) where an ALJ made an RFC error based on an outdated source opinion that did not include consideration of a critical body of objective evidence. *Hancock v. Comm'r of Soc. Sec.*, 2022 WL 801278, at *4 (W.D. Ky. Mar. 15, 2022) (citing *Branscum v. Berryhill*, 2019 WL 475013, at *11 (E.D. Ky. Feb. 6, 2019)). Notably, however, *Deskin* is not controlling and has received mixed reviews in its own district. *See, e.g., Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 U.S. Dist. LEXIS 18644, at *4 (N.D. Ohio Mar. 1, 2010); *Berrier v. Comm'r of Soc. Sec.*, No. 3:20-cv-10655-JZ, 2021 U.S. Dist. LEXIS 251442, at *20 (N.D. Ohio Sep. 10, 2021) (citing cases that followed *Deskin* and those that did not), *report and recommendation adopted*, No. 3:20 CV 1655, 2022 U.S. Dist. LEXIS 11780 (N.D. Ohio Jan. 21, 2022).

In determining Claimant's RFC, ALJ Pickett considered Claimant's testimony; a third-

7

party report from Claimant's mother; a statement from Shannon Hines, LCSW; office treatment records from Park Duvalle Community Health Center; office treatment records from Family Health Centers; and opinions by two state agency psychological consultants.

The state agency psychological consultants did not render an opinion as to Claimant's functional limitations because "they found the claimant had no severe impairments[.]" (Tr. 34). No other medical opinions appear on the record as to Claimant's functional limitations. Overall, ALJ Pickett did not evaluate, reject, or accept any medical source opinion in making his RFC determination. Despite stating that he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c" (Tr. 32), it is clear that ALJ Pickett relied solely on his own lay interpretation of raw medical data in reaching his conclusion.

Despite the complete lack of medical opinion evidence on the record, the Commissioner argues that remand is not warranted. (DN 15, at PageID # 1166). The Commissioner reasons that, because ALJ Pickett imposed more restrictive work limitations than were found by the state agency psychological consultants, ALJ Pickett ultimately benefitted Claimant and his determination cannot constitute error. (*Id.*, at PageID # 1166-67). It is true that an ALJ's RFC determination need not be based on an identical medical opinion to be supported by substantial evidence. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). However, here, ALJ Pickett did not merely disagree with the state agency consultants about work limitations. The state agency consultants determined Plaintiff had no severe mental impairments and did not provide opinions as to the RFC, whereas ALJ Pickett found that Claimant's mental impairments were severe before making his RFC determination. (*See* Tr. 30). The different outcomes between the state agency consultants' determination regarding severity of mental impairments and ALJ Pickett's

determination indicate that the objective medical evidence was complex. "Under these circumstances, an expert medical advisor is absolutely critical to properly evaluate plaintiff's impairments, symptoms, and functional limitations." *Harris v. Comm'r of Soc. Sec.*, No. 14-10966, 2016 U.S. Dist. LEXIS 64117, at *10 (E.D. Mich. Mar. 2, 2016), *report and recommendation adopted sub nom. Harris v. Colvin*, No. 15-CV-10966, 2016 U.S. Dist. LEXIS 63988 (E.D. Mich. May 16, 2016). Therefore, ALJ Pickett's determination is not supported by substantial evidence and the case must be remanded.

## IV. Order

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner be **REVERSED** and this matter be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration with instructions to conduct additional proceedings to remedy the herein identified defects from the original proceedings. On remand, the Commissioner shall further develop the record, as necessary, to completely comply with the applicable regulations and permit meaningful decision as to Claimant's entitlement to benefits. A separate judgment will be entered.

Copies:        Counsel of Record